All right. Will counsel on State of Illinois v. Family Vision Care please approach? Please tell us who you are and who you represent. Good morning, Your Honor. Charlie Wysong, I'm counsel for the relater in this case, the Bankruptcy Estate of Marie Cahill. And I'm Jennifer Aronoff. I'm counsel for the four defendants of Chiefly Family Vision Care. All right. And Mr. Wysong, how much time would you like? And keep in mind we have read the briefs, we're familiar with your arguments. Certainly, Your Honor. Roughly 15 minutes and maybe a couple for a short rebuttal should be sufficient. All right. And Ms. Aronoff? No more than 15 minutes. Okay. I'll hold you to that. We'll see. All right. All right. Mr. Wysong, whenever you're ready. Yes, Your Honor. Your Honor, this appeal presents two clean legal questions about the authority and the intent of the Illinois General Assembly when they passed the Illinois Insurance Claims Fraud Prevention Act in 2001. The first issue is whether the General Assembly has the power or authority to use a QI-TAM mechanism to fight insurance fraud. That is the constitutional standing issue. And the second issue is what the General Assembly intended when they authorized a, quote, interested person, including an insurer, to sue with the Attorney General under Section 15A of the Act. And that is the statutory standing or statutory interpretation issue. Can you think of any other context in which the legislature has provided that a private citizen can enforce the state's sovereign authority to impose fines and penalties for violations of its laws? Yes, Your Honor. We've cited the Illinois False Claims Act in which the QI-TAM mechanism is premised on both the sovereign interest and the fiscal interest. In the False Claims Act, you'd have an injured party. You'd have somebody who says, I was defrauded, and I'm suing to enforce my own interest plus that. I mean, this is the insurance company that is defrauded. And the state certainly could impose fines and penalties for that fraud, but the plaintiff isn't defrauded. Yes, Your Honor. And in a False Claims Act case, the relator isn't defrauded either. The relator has no injury. By definition, as the Supreme Court explained in Skagitti, relator has no injury. But in a False Claims Act, the state has been injured. Yes, Your Honor. Two injuries. Right. But here, we only have one. You would probably argue that injuries of sovereignty are law, but we don't have any damages to the state. Your Honor, there is not a fiscal damages injury premise under this Act, the Fraud Prevention Act. But yes, there is an injury to the state, and I think that's undisputed, is that this violation of the law is an injury to the sovereign. That's what Skagitti holds. That's what Vermont agency holds. And there is a long historical precedent for QI-TAN actions that don't involve fiscal injury to the state. We cite those examples in Illinois on page 20 of our brief, statutes that the Illinois General Assembly passed with QI-TAN laws and penalties that involve no fiscal harm to the state. The Supreme Court in Vermont agency relied similarly on QI-TAN statutes. Well, let's just talk about Skagitti in Vermont agency regarding standing. And there, Skagitti, I think citing to Vermont agency, says it recognizes that FCA complaints inherently assert injury to government sovereignty based on violation of laws, which we just talked about. Then that word and, a proprietary injury, which means actual damages. So when you look at those cases, they're saying you need one plus two, aren't they? They are not, Your Honor. Either one is sufficient. But when you use the word, they should have said or, if you were right. No, Your Honor. They're recognizing that there were two injuries there. Both injuries are injuries that are sufficient for standing. No, it says that complaints inherently assert injury to, one and two. It asserts, it says the complaint asserts injury to the sovereignty and injury of a proprietary injury. It says both. Yes, Your Honor. It's observing that the complaint asserts both. It is not saying and never says anywhere in Vermont agency or Skagitti that both are required. Vermont agency relies on old and former statutes that did not involve a injury, fiscal injury to the state, and says that history is well-nigh conclusive of the issue of standing. Key TAM statutes have never required fiscal harm. There's nothing in either case that says it's required. Not only do they rely on statutes that don't involve fiscal harm, but the Federal Circuit in Stauffer v. Brook Brothers. So you're saying you can bring in an FCA claim without having any injury? You can bring an FCA claim without a fiscal injury, too, as well, Your Honor. I'm talking fiscal injury. Yes. Just pure? Yes. It's a penalty-only False Claims Act claim. That's permitted under both. Under Illinois law? Illinois law and Federal law. That statute, Your Honor, the False Claims Act, penalizes the mere presentation of a false or fraudulent claim. You don't have to have fiscal loss there at all. The entire premise of the defendant's argument that False Claims Act requires the fiscal injury is mistaken. In addition, the language says that they're an assignee of the state's right to bring suit. That's Skagitti. And that did not say that it's a right to bring suit on a matter of damages claims. So cite a case, an Illinois FCA case, where there were no damages to the state. I don't believe we've cited such a case in Illinois, Your Honor, but there's also – Well, you're saying – we're talking about Illinois, okay? Yes, Your Honor. And you're saying, on the one hand, well, it doesn't include proprietary injury, and on the other hand, well, there is no case since the FCA came into being that says so. The statute, Your Honor, does not require loss. The Illinois statute penalizes – No case has ever said that. So what you're asking us to do, if I understand you correctly, is first impression. Do you agree? I do not agree. I believe Skagitti controls this case, Your Honor. What does? Skagitti controls this case, Your Honor. Skagitti had nothing to do with this statute, did it? Skagitti says QTAM statutes are constitutional. That is the holding of Skagitti and Vermont agency. And there is no case – Wait a minute. That would be – did they cite any case under the statute we're talking about in that case? No. They did not. They did not. So how can you say that a case is presidential? You know, made a decision. You're saying it decided this issue. That's what you're saying. Am I right? I'm saying it controls the outcome here. Because Skagitti – Even though it didn't decide it. In fact, there's a case – I remember somebody dissented or wrote a concurrence. There is a federal case, I think, where somebody said, well, we haven't really reached that yet, that issue. We shouldn't be deciding that until we reach it. What you're saying is to take from the FCA and apply directly to the insurance fraud, to me, doesn't allow for any interpretation at all. And you're saying it's a fait accompli. Well, Your Honor, it's not just about the FCA, right? Yes, that was the particular QTAM statute before the court. But there is a long history that Vermont agency details, and we add to from Illinois, of QTAM statutes. They have never required a financial loss, and they have never been held unconstitutional. And the statute itself doesn't require a loss. The statute itself just says, look, if you are guilty of insurance fraud in Illinois, here's what happens. You pay a penalty. So it's not just the sovereign interest of the state.  Certainly, Your Honor, and you'll note that this statute, the Fraud Prevention Act, dedicates those collections to fighting insurance fraud. That's how the state's portion must be used. So then you add on a whistleblower on top of that in the later sections, and you find that the state is encouraging people to tell them when insurance fraud is happening. That's the whole purpose of the statute. Yes, Your Honor. And so if the purpose of this is for the state to encourage people to tell them when insurance fraud is happening, it's really irrelevant whether or not the person who's making the report suffered any damages or, in fact, whether the state itself suffered any damages other than the fact that it has this prospect of collecting fines and fees and penalties from somebody who committed insurance fraud. Yes, certainly, Your Honor. The state will have a financial interest in recovering from the lawsuit. They also have an interest in fighting an insurance fraud. I mean, they do fight insurance fraud through other mechanisms. The Attorney General's Office, through the Department of Insurance, those monitoring enforcement costs have a fiscal impact on the state. And by deputizing the whistleblower here, the General Assembly was explicit in their legislative task force report where they said, we thought about letting the state further enforce insurance fraud. And they said that would take too many resources. They were concerned about resources. And that's at appendix page 48 and 49 is the report. And they said, instead, we're going to have a strong whistleblower statute because fraud is often covert. The government would take a lot of resources to find and prosecute these cases. Instead, they've set up a system in the long history of key TAM statutes with an incentive where the private relator can litigate with the Attorney General, always with and under the control of the Attorney General, to fight insurance fraud. That is the mechanism the Attorney General, the General Assembly chose. And there is no case that says they cannot do that. There is no legal precedent. The defendants may argue about the policy wisdom. They may say this isn't common. But there's no basis to say they do not have the authority to do this. If we accept the defendant's argument about the legislature's inability to deputize a private citizen to collect fines and penalties on behalf of the sovereign, would we have to declare this act unconstitutional? I believe you would, Your Honor, particularly the key TAM portion of it. Maybe the part regarding enforcement by the Attorney General would survive, and we'd have to think about that. But they are saying that the Attorney General, the General Assembly does not have the authority to do this. That is their argument. As a constitutional matter, and recall that we presume in Illinois statutes are constitutional, and our Constitution is not a grant of rights. It's a check on rights. And there is nothing in the Illinois Constitution that precludes this. You know, defendants' arguments were raised expressly, Your Honor, after Vermont agency, interpreting Vermont agency to your point, Justice Hyman, about the two injuries in the Brooks Brothers case. The Federal Circuit looked at this. They looked at the language of Vermont agency, and they projected the argument. In 2010, they upheld the key TAM statute, a federal key TAM statute, that did not involve fiscal loss to the state. Because they said both injuries are injuries to the sovereign, both are injuries in fact, and both are assignable. We purport, Your Honor, that that is a case directly on point and persuasive from the Federal Circuit in their reasoning about Vermont agency. But penalties are a loss to the state. They're just a future loss. Yes, Your Honor. The state will recover. Projected loss, not an actual loss. Certainly. And on a constitutional issue, Your Honor, even if we step back and look at this as a matter of assignment of legal claims, under Kleinwert, we know that in Illinois, the rule is that legal claims are assignable, and non-assignability is the exception. And there's no basis even stepping back from key TAM law to say that the state cannot assign this legal claim to litigate with the relator. Scatchitty just says that the Attorney General must control the litigation, and that's true under this statute. It's always litigated with the Attorney General or under the Attorney General's control. If – I'm going to go a different direction. Yes, Your Honor. Advanced Physicians case. You're familiar with it. Okay. And in that case, it was agreed that the Vellon hemes were not proper relators because the information was already out there, and they came in late, and that was the reason that nobody contested it. But let's say that they – nobody is saying in that case that they wouldn't have been proper relators had that not been the case.  I agree, Your Honor. So, I mean, even though the parties say, well, you know, distinguish it because it doesn't get to the case that we have before us, doesn't this help you? Yes, Your Honor. I believe that was a public disclosure case, and there's nothing in there that suggests the reasoning or anything about the interested person being a limitation. That was decided on public disclosure grounds in Restre-DiCato when it was before the appellate court, certainly. If there's nothing further on the constitutional issue, Your Honors, I'd like to turn to the statutory interpretation question. And this is the issue about whether the Attorney – the General Assembly intended to enable all individuals with nonpublic information to bring suit with the Attorney General. Now, defendants want to nullify the quid tan mechanism of this statute by requiring that the relator personally have suffered some injury to a legal interest. That is antithetical to the quid tan mechanism. As Scacciati explained, the entire purpose is to assert the State's interest, and relator's interest is irrelevant. Who under the defendant's interpretation, other than the defrauded insurance company, would have the ability to pursue a claim? No one, Your Honor. And that is our point, is that it would limit this to just the defrauded insurer who has the injury. Both at the trial court and on appeal, they have yet to point to a single concrete example of who else would meet their definition. And I think that is telling. Well, they suggest that if, for example, Ms. Cahill was fired as a result of her disclosure of this information, she might have a personal interest. Well, she would certainly have an interest in a retaliation claim, Your Honor. But if you think about it for a moment, that cannot be the measure of who is an interested person. First, it's circular. A relator would have to file suit in order to experience a retaliation, in order to be allowed to file suit. Nobody would get in the door. This supports you because it's in a separate section. Yes, Your Honor. That separate section, does that have the word person in it? I believe it does. It talks about employees. Yes, Your Honor. So the fact is, it doesn't even talk about the person bringing the case, the relator. Yes. So, and it's not a separate cause of action unrelated to the fraud act. Right. Therefore, it seems that it would support the idea that other than insurance companies, in fact, anyone who has information would be a person who could bring a case. Yes, Your Honor. And if you step back and think about it, drawing a line between those who have experienced retaliation and those who don't, who haven't, as to who can work with the Attorney General, it doesn't make any sense in the structure of the statute. It was never about the relator's injury to begin with. The purpose of the Fraud Prevention Act is to assert the state's interests. And that interest is met whether the Attorney General seeks the penalties, whether a relator who suffered retaliation seeks the penalties, or whether a relator with no retaliation seeks the penalties. The purpose is served equally, and drawing these minute distinctions between who is interested and isn't, based on whether they've experienced retaliation, would simply go to limit and gut the statute. And there's no suggestion that they were trying to limit the statute here. The reasoning is a lot like the Kleinwert case, Your Honor. That's where the Supreme Court of Illinois determined that punitive damages claims are assignable. And they said, if you think about it, the deterrent effect of punitive damages, they're just as effective whether the injured party brings the claim or whether the assignee of the injured party brings the claim. The same is true here. Any relator with non-public information is able to, under this statute, bring the case to the government and litigate with the Attorney General. Why would they even have this provision with regard to retaliation if an individual with information could come forward? I agree, Your Honor. So is the interest that the party must possess defined by their possession of material non-public information? Yes, Your Honor. We put forth that the phrase is simply describing the relator, and the relator is the person with the non-public information. You do have to have something to bring a case. You have to know something about the fraud, and you can't just rely on public reports. That is why you have an interest. You have useful information to come to the government, and that is who is empowered by the General Assembly to bring a lawsuit under this statute. Your Honors, the defendants here are major health care corporations, and they are committing an intentional fraud. They are in the industry. They are well aware of the power of QI-TAM suits for fighting that fraud, and they see liability. They would like to rewrite this law and write the QI-TAM mechanism out of it. They are welcome to go to Springfield to lobby to change the statute. That is their prerogative. But as we've explained in our briefs in here, there is simply no basis in the law to conclude that the General Assembly exceeded its authority or did not intend individual relators to bring suit along with the Attorney General. Unless there are further questions, Your Honors, for these reasons and those in our brief, this Court should reverse the decision below, and I'm happy to answer any further questions or address the defense argument on rebuttal. All right. Thank you. Thank you, Your Honors. Ms. Aronoff. Good morning, and may it please the Court. I'm Jennifer Aronoff on behalf of Family Vision Care. The dismissal below should be affirmed because the circuit court correctly concluded that the plaintiff or leader lacked standing and was not an interested person qualified to sue under the Act. In addition, the record contains two other independent grounds that support affirmance. The complaint fails to plead fraud with particularity, and this action is barred by release. So I'll ask you the same question I asked Mr. Weissong, and that is in order to accept your argument that the legislature cannot deputize a private citizen to pursue the sovereign's injury, do we have to declare this statute unconstitutional? I would say no. I think our argument is more that you have to bring your own interests. Interested person has meaning, and that supports the standing argument. So there are people and entities that can rightfully bring suits under the Keating Act. Who other than the defrauded insurance company? Well, I would say someone that paid more in insurance due to fraud, so it could be a patient who paid a copay. The actual original context of this law in California was for insurance. And a patient who paid more could have what? Say I paid too much for my insurance, now I get to recover the fines and penalties on behalf of the state. That would be okay? Well, it's not on behalf of the state in that case. They have their own injury. I mean, I think we need to go back to what the principle of standing requires. It's an injury in fact to illegally protect an interest that is fairly traceable to defendant's actions and redressable through the statute. And this statute gives people who have been injured, as well as the state, a way to recover, like punish insurance fraud in a different way, other than just by bringing a direct action. But you have to have standing, and I think that's what SCSHD stands for. But isn't that a sort of loop that you get lost in? Because if it only covers the insurance company itself that's been defrauded, and a patient who figures out somehow that, oh, there's something wrong here, then the patient, there aren't going to be any patients like that. Patients are going to say, well, I got this great insurance plan done, and I didn't have to pay as much for my glasses or my optical care, so why am I going to beef about that? I'm going to stay quiet about it because I got a benefit out of it, out of this insurance fraud. I like the insurance fraud. Well, I think you need to remove it from the context of this case, because the question is whether anyone can bring suit other than an insurance company. But that also begs the question, how would a patient even know about it? Well, another example I would give is this case in California. The statute actually arose out of the car insurance fraud context. And I would picture an accident where there's an accident, there's a coverage up to $500,000, two people injured. Person one files a false insurance claim and exhausts the coverage for $600,000. They've exhausted the claim. Then person two can't get benefits, so person two could also sue under this law. So there are other, I mean, look, it's obviously a much more limited range of situations than the plaintiff's interpretation of the law. Well, but you say that, but then I don't understand why they would have a separate section on retaliatory discharge. You're saying basically that only applies to insurance company employees, although it doesn't say that at all. Look, I agree that it is hard to reconcile those provisions of the statute. Maybe the reason you can't reconcile it is that your argument doesn't pass muster. No, I mean, look, the QTAM provision uses interested persons. Does it? How many times, other than the title, does this statute at whole use the term interested persons? It's only in the QTAM provision. How many times throughout the statute that we're talking about is the word interested persons used? It's once. It's in the QTAM provision. Once. You know the answer. No, I do know the answer. You do know the answer. Thank you very much. But I counted up the number of times persons is used. And throughout the statute thereafter, you are correct, 29 times. I may be off one or two, but I got 29 times. So I didn't count it when it was a person being the defendant. I only counted it when the person was being the realtor. So 29 times, it doesn't say interested persons. It just says persons. If interested was so important and so overarching, you would think that it would be mentioned at least one more time. But it isn't. And it's not even defined. It's not a defined term. So if they wanted it to be something, as you say, I mean, they call it descriptive. If it was going to be something more than descriptive, they could have defined it. They could have used it at least one more time. They didn't. 29 versus 1 seems to me to say that the term interested really is not to be emphasized as much as the idea that it's a person who has some information. It's descriptive of a person with information. But thereafter, they just call it persons. How do you reconcile that? Well, I don't think that you actually can. I mean, I think that they've used interested person.  I know, you know, both of you talk about Illinois law, but you also talk about California law, which is very much at issue here because Illinois basically just, with very few exceptions, took California statute and added it here. So Illinois, as I think the parties point out, it's only, interested parties is only in the probate. So, which doesn't seem to have much precedent here. So we really need to, what would you say other than California law, is there much anything else in California law that interested persons? So there's a wide range of cases in California, actually, some of which are stated in our brief. It runs the gamut from essentially not considering it, taking the plaintiff's view, and then there are other cases in California that hold that it is intended to be insurance companies and their assignees and other people who can raise the stakes. I don't think HAB says that at all. HAB does not say that, but that's a California appellate case. It's not the definitive proclamation of the California Supreme Court. Well, we're the appellate court, too. That's true. Well, but there are other cases, and one of which is cited in our brief, which says that it's meant to be for insurance companies. And there are other, I mean, it's not the same wide spectrum of people. It doesn't say that. Okay, go ahead. So was this just in order to combat insurance fraud, the state said, in addition to their contract remedies, in addition to common law fraud, in addition to all the other ways a defrauded insurance company can recover against somebody who submits false claims, let's enact this statute. Let's give them something else. Is that the only purpose of the statute? I mean, there's nothing prohibiting the State from passing duplicative statutes. It seems like this is a way to punish it more, because it's essentially the injured party, someone with standing, which is not the plaintiff here, and the State's punitive power, working together, but they both have standing. Here, who is the bankruptcy estate of retail to this case? If that was the purpose of the statute, then wouldn't it have made sense for the legislature to say, any insurance company defrauded by X conduct can bring a QTAM action? I mean, if that's what the statute meant, why would they use interested person? Well, it says an interested person, including an insurance company. So that's the only example that's given of who a proper relator would be under the QTAM provision. They don't fill in the blanks, but why say including insurance companies? If it's just insurance companies, this is just an extra remedy for insurance companies who are defrauded to combat the fraud. Why have this nondefined, very general term? I mean, I think that the statute is not internally consistent, but the fact is they use this language. In California, the term interested person has meaning. It means someone with a legal interest. It's not just any person. And the only other use of this term in Illinois is the same. If you look in Black's Law Dictionary, interested person is not defined as any person. It's a person with a legal interest. And I think this is we're talking about the meaning of interested person, but this really routes back into the standing argument. If you define interested person the way that the plenip does here, you have a standing problem, which is that the plaintiff will not have any injury. There won't be an injury pled that the plaintiff is bringing to this lawsuit. The plaintiff here argues that the state can just assign its sovereign interest to them. But as Your Honors mentioned during their argument, there's no precedent for that. And, in fact, there are no other QTAM laws. Well, there is precedent. There's the bounty hunter statutes, for sure. Those are 200 years old. So just because they're not followed now doesn't mean that they haven't been brought back. In fact, they have been brought back in terms of the QTAM actions. I mean, that's the way that they've been brought back in modern times where we do have much more enforcement available. Well, but the only QTAM currently in effect in Illinois is the False Claims Act, which has damages to the state. So, but this is a different statute. You said it was not internally consistent. But it is internally consistent if we accept the appellant's argument because everything makes sense if you say that it's somebody like Ms. Cahill who has this knowledge of a fraud being committed by an insurance company. I guess it doesn't make sense with respect to how interested a person is used elsewhere. So you would have to drain the meaning of interested person. And if it's our deal with the legislature. Why is interested person so important when it's only used once? Well, it's still used. I mean, the way to discern the intent of the legislature is still in place. Well, but maybe if it's used once and the other term is used 29 times more, maybe the other term is really the term we should be looking at. And that term is very broad. I think it's because it solves the standing issue. The plaintiff here has not articulated why they have standing. I mean, this is a foundational concept to be able to bring a suit to Illinois. They have standing because the state has granted them. The state decided not to go forward on their own. So the state is still involved in this lawsuit, isn't it? They have not intervened. No, but they can at any time. They have to be copied on pleadings. Exactly. So they're keeping track. Any time they can come in, the statute sets out that this is not done independently. Well, that's sort of a separation of powers issue. If you look at Skashidi, they actually divide the standing challenge into two sections. There's sort of is there an injury in fact? And then they look at there's a constitutional separation of powers challenge, which is that it's sort of unconstitutionally taking power away. But you didn't bring that. That's not your argument. That wasn't an argument anybody raised here. No, our argument is only on the standing section. But to go back to Skashidi, they can't explain how they have standing. They say that while the state can assign its police power, but if you accept that, then the state can do that. I mean, it upends the entire concept of standing. Okay. The state had the power to say to the court, forget it. Dismiss this case. They didn't do that. They haven't done anything. Okay. But the state also has the authority to understand that this complaint is filed in camera. It's held up for 60 days while the state explores the information. And the use of the term, the Attorney General, blah, blah, blah, after he or she receives both the complaint and the material evidence and information, the use of the term information seems to loop back into interested person. Because somehow the state gets this information from someone, and it seems to me that that interested person is then almost rounded out by the use of the word, receives the evidence and information. The interested person has the evidence and information that they give to the court under seal. It's held for 60 days while the AG checks it out. And that, to me, closes that loop about who is the interested person. It's not just an interested person who was a patient and lost some money somehow, which I personally think is going to be very hard to find in an insurance fraud case because most patients would benefit from insurance fraud. So who's going to whistleblow? But that seems to me to bring it back to an interested person as a person who has evidence and information they can bring to the state to show there has been fraud. But it still doesn't explain how they have their own standing in this case. I mean, here the bankruptcy of state is essentially akin to a witness. Witnesses do not get to have an interest in bringing a lawsuit. They claim that they have witnessed insurance fraud, and they have this information. And if the state wants to reward that through setting up sort of a reward or some other bounty system, but this isn't just that. It's giving them an interest in the lawsuit. They are standing with the state bringing this case. And there's no explanation of how they have the ability to do that. The victim is the insurance company here, VSP. We don't know what they even think of this claim because they're not a party to the case. That's very different from the False Claims Act context where you know that the government has damages because that is the foundation of the whole suit. You know how they feel about those damages. We don't know how the victim feels here. It's a non-statute that you have someone who hasn't been injured herself or itself and comes in with information but doesn't know how the victim would feel. It's just an odd structure, and it doesn't explain the standing question. If the insurance company would like to know that they were defrauded and that they want to be defrauded, wouldn't they be happy to know that somebody is blowing a whistle? Wouldn't they say, wait, there's bad stuff going on here? We don't know if they would like Ms. Cahill bringing claims on their behalf. And one of our other arguments is that the fraud is not played with particularity, which goes to this, too. We don't know, because they're not in this case, how they feel about these claims. I mean, this is a public lawsuit. They're not here. We don't know what they think, but there's been no allegation. And granted, I know this is sort of outside the record, but the claims have not stopped being paid. There's no allegation of that. So you have a law that gives someone who hasn't been injured the right to come in and sue purportedly on behalf of someone who is the victim and isn't here. If Ms. Cahill hadn't brought forward all of this information and evidence about fraud, how would VisionCare have even known they were being defrauded up to millions of dollars? Well, that assumes fraud. Maybe Family VisionCare or maybe VSP does not think that this is fraud. I mean, we don't know that, because they're not part of this case. And that's one of the flaws in the statute. And that's why the standing question is so important. Because when someone has their own standing, then they have an interest in the case that is concrete. That's why standing is required to bring suit in Illinois. The plaintiff's interpretation of what this law does would upend the concept of standing. It would allow the legislature to do an end run around a requirement like that. That sounds like we have to declare the statute, or at least the KTAM provision, unconstitutional. No, because the insurance company is a proper relator. And there are – we don't know what other examples of a proper relator there are. But you don't need to decide that to decide this case. You need to decide if Ms. Cahill is a proper relator. And she is not only alleged no injury, she is very clear that she has no injury. That's their position. Well, would you agree that the Vagonhams are proper relators if the information came originally from them? I don't know enough about the details of that case. You don't know enough about any case, then, if that's your argument. I mean, any case you cite, all you know is what's in the cases. So based upon what's in that case, can you answer the question? I mean, if they don't have their own injury, then they're not a proper relator. Which is not anything that the State was concerned about in that case. Well, I mean, it wasn't an issue. It was the way the information came out. But you're not willing to say that they would have been a proper relator? I would not go out on that limb. I think that you have to have your own injury. And, obviously, that severely limits the pool of people who can bring a keysam action. But the State still has the power to do it. So why go through all this work? Why they do that? In fact, the example you gave in California of the auto wreck had nothing to do with, you know, that wasn't an insurance company bringing it, that was an individual. These are individuals bringing it because they had knowledge of what was going on. I don't understand why the State of California and the State of Illinois go to such extent just to give insurance companies, as Justice Mason indicated, another way to go about this. That doesn't – but if you take the appellant's point of view, doesn't everything seem – at least you are against it, but everything seems to fit in line, doesn't it? That is one vision that we do not agree with. But I think that the problem is that even if you accept their position, there's an irreconcilable standing problem. To hold the way that they want you to hold would be to say that you don't need your own standing, that this is okay, that you can just bring suit to vindicate the State's interest in penalizing violations of the law. That's what happened in Brooks Brothers' case with the ties, exactly. Well, that was the outcome in that case. That is not a binding case. And what's telling about that is that after that decision, the law was changed to require an injury. But that's irrelevant. The fact is that the legislature can always change the law after we make decisions, after courts make decisions. That's just a new law. But at the time that law was made and how it was interpreted, the legislature maybe didn't like it, but that was the law. And that's how it was interpreted. So it seems to me that that case is pretty close to what we have here, if not exactly, although this has nothing to do with ties. And nothing to do with patent laws. No, I mean, it's not a binding case. And I think that the analysis there is flawed because it just sort of punts on the standing question. It conflates the damages and the sovereign injury in Vermont agency. And Skashidi does not do that. Skashidi, which is, you know, the Illinois Supreme Court's interpretation of it, differentiates and it premises the standing on the damages claim. So the question that's hanging out there is, if there is no damages claim, how does the relator, who becomes a real party in interest, how do they get their standing? And I don't know the answer to that if you take their position. That's why you have to. What about Mr. Wysong's argument that claims are assignable unless someone specifically says they're not? And so the legislature has decided that the state can assign its sovereign right to collect these fines and penalties in the interest of pursuing insurance fraud. And nothing says the state can't do that. I think that goes to the nature of a claim and what you need for standing. An injury to the state as sovereign is not a distinct and palpable injury, and it's not a cause of action that can be brought by any other party. It's sort of unique to the state. It's unique power. Damages, you can see how the Vermont agency and Skishidi courts adopted that, because even if damages are against the state, that's an ordinary civil claim of the kind that is regularly assigned. This is different, and as your honors pointed out, there is no law that says that you can assign that sovereign interest. Even if the general principle is that cases can be assigned, causes of action can be assigned, this is not a cause of action. There's no distinct and palpable injury to the case. The state would not be able to bring a civil action based on this because of an injury. It's because the state has the power to enforce the laws. And if this statute is allowed to stand, then the state can sort of deputize other random citizens with no interest or connection to the case. Well, but the interest is the possession of material non-public information not available to the public. And so that's the realtor's interest is, I've got this information that the insurance company is being defrauded, and nobody else knows it but me. And so I'm the interested party who can pursue this claim. That's information, but how is that an injury sufficient for standing? It fails under the Skishidi analysis. There isn't one anywhere here. Information, I mean, it's like the witness metaphor that I used earlier. Just because you have information does not mean that you have an injury sufficient to be a plaintiff in a lawsuit. And so that's really the crux of the issue here. If you have any other questions about this issue, I'd be happy to discuss it. I'd just like to quickly move to our two other arguments as well. Even putting this very interesting argument aside about the standing and interest of person, there's just a fundamental pleading failure in this case. You know, this is a fraud case. It has to be alleged with particularity. There is – Plaintiff says every claim submitted was fraudulent because it did not – What else do you need to know to defend the case? Well, I mean, you have to see what kind of representations were made to VSP beyond that contract. It's not about just one representation. It's about all of the claims. So what representations were made in the claims? How do we know that that was material to payment? That's a totally conclusory allegation, that it was material to payment, that they wouldn't have paid if they had known. There's no who, what, where. There's just nothing there to show that these claims would not have been paid beyond that very allegation. Except for the fact that it was in the contract that VisionCare had with this doctor. Well, it is in the contract, but there's a lot of provisions to that contract, and it's not clear that that is one that's material to payment. If they found out that that had not been adhered to, there's no – This group of doctors was not a storefront owned by one or two doctors. It was part of a major national corporation. We dispute – I mean, that is in the pleading, but that's a fact issue. That is true. Yeah. If that's the case, that still is hanging the question of materiality. Whether they wouldn't – So if Ms. Cahill is alleging, hey, there's something wrong here, and she's provided sufficient evidence and information in her complaint, and it's been sealed for 60 days, and she's the one that's willing to step forward and say, hey, there's something wrong here, you're saying that that doesn't make her an interested person, and we're questioning whether or not – why it wouldn't make her an interested person, why it wouldn't give her standing. I mean, my – our position is that you have to have your injury. I mean, that is a fundamental requirement of standing. She doesn't have it, and she can't explain where it comes from. I mean, she says that it comes from the state assigning its sovereign interest, but that's not a distinct, palpable, traceable, redressable injury. It just isn't. So it would be a very glaring exception. I mean, as the plaintiff pointed out, statutes are presumed to be constitutional, and you should presume that the Illinois Supreme Court intended this statute to fit with existing concepts of standing, not upend it. If you have no further questions, we would just ask that you affirm the decision below. Thank you. Thank you. All right. Mr. Wysong, briefly. Yes, Your Honors. I have nothing further unless the Court has questions. All right. Thank you, Your Honors. Thank you. Thank you for your arguments here today and for your briefs. You've given us some interesting issues, and we will take the case under assignment – under advisement. Excuse me. Thank you.